[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Prior to November 1, 1988 the Plaintiffs were owners in fee simple of a certain parcel of land in Jamestown, Rhode Island. Said parcel ("subject property") consisted of 553,212 square feet of unimproved land. On November 1, 1988 the Defendant acquired by eminent domain the following portions of the subject property:
(1) 52,552 square feet of land in fee simple
(2) 5,850 square feet of land as a temporary easement for a period of one year.
In December, 1988 the Defendant deposited the sum of $16,455 with the Registry of the Rhode Island Superior Court, said sum being the Defendants' estimate of the amount to compensate fairly the Plaintiffs for the taking.
The taking in question effectively divided the subject property into two parcels. This division occurred by the need to place a roadway through the center of said property which was to serve as an access road to an unrelated parcel. Said taking was made as part of the redesign of Route 138 which serves as the connecting road between the Jamestown Bridge and the Newport Bridge. The sole factual issue before the Court is the determination of the amount of just compensation due and owing to Plaintiffs as a result of the taking. The Plaintiffs offered the expert testimony of Mr. Keith Roberts, an employee of Andolfo Appraisal Associates, regarding that issue. Mr. John Ryan, an employee of the Defendant, offered expert testimony on behalf of the Defendant.
The Court finds Mr. Roberts' testimony persuasive as it relates to the value of the subject property before the partial taking. Mr. Roberts concludes that the highest and best use of the subject property would be for residential purposes in the form of a cluster development. The hypothetical purchaser/developer would view cluster development as minimizing development cost in that significant portions of the site would be preserved as open space. For that very reason, however, the Court rejects Sale #1 and Sale #3 utilized by Mr. Roberts. In each instance his adjustment to sales price for unusable land (i.e. land in a wetlands area) cannot be accepted in that he fails to account for such land as potentially being part of the preserved open space. The Court finds that Sale #2, however, is a reliable indicator of value. The adjustment made by Mr. Roberts with respect to that parcel seems reasonable with the exception of the 25% adjustment made for size. The Court believes that one-half that percentage (i.e. 12.5%) adequately adjusts for the "size" differential. Accordingly, Sale #2 is modified to indicate a value of $44,225. per acre.
The Court rejects the comparable sales data Mr. Ryan utilized in developing his expert opinion. The lots he used for comparable sales were in fact not comparable to the subject property. The Court finds that those lots were suited only for single family development, unlike the subject property which was and is suitable for cluster development. Given the wetlands that take up a considerable portion of said lots and the configuration of said lots, the Court finds that cluster development of said lots would be virtually impossible.
Although the Court is hesitant to use one comparable sale — Sale #2 utilized by Mr. Roberts — to value the subject property, the Court finds that Sale #2 by itself is the best evidence in determining the fair market value of the subject property before the taking in question. The Court thus concludes that the value per acre of the subject property, before taking is $44,225 per acre. The value of the subject property, before taking is $561,658 (i.e. 12.7 x $44,225).
The Court finds the "after value" analysis of Mr. Roberts to be persuasive. He correctly concludes that the highest and best use of the "after" property continues to be residential, but with diminished utility given the fact that the property as divided by the road precludes the use of cluster development. In that regard he utilized comparable sales data that was probative of value for each segment of the divided property — i.e., the resulting 3.4 acre and 8.09 acre segments. Said analysis, including adjustments made with respect to the comparable sales data, are accepted by the Court. Said analysis suggests the after value is $515,400.
Accordingly, the damage incurred by Plaintiff as a result of the taking in fee simple is $46,258. The Court rejects Mr. Roberts' contention than an additional award should be made for the "actual take", as he denominates it at p. 25 of the Appraisal. To award for the "actual take", so-called, having already compensated for "before" and "after" value would result in duplicative compensation.
The Court accepts Plaintiffs' contention that the easement value is $489.12, which is only nominally higher than the value attributed to said easement by the Defendant.
The Court rejects the Defendant's contention that Plaintiff has derived a special benefit from the taking that should be offset against the award. The testimony in that regard is highly speculative. The evidence is simply not persuasive that the cemetery road and other aspects of the taking confer a special benefit.
Accordingly, the total damages Plaintiff has suffered as a result of the condemnation is $46,747.12. The Plaintiff is awarded that amount less the amount previously deposited into the Registry of the Court including interest accrued thereon. Judgment shall enter in that amount plus statutory interest and costs.